**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **NICHOLAS URIBE** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  7:22-CV-00332** |
| | § | |
| **GRIFOLS USA, LLC AND BIOMAT** | § | |
| **USA INC.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY DEMAND**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

NOW comes Plaintiff, Nicholas Uribe, who files this, Plaintiff's Original Complaint complaining of and about Defendant Grifols USA, LLC ("Grifols") and Defendant Biomat USA Inc. ("Biomat"), the negligent producers of false testing and lab results, and for causes of action would respectfully show unto the Court the following:

**I.
PARTIES**

1.      Plaintiff Nicholas Uribe is an individual resident of Hidalgo County, Texas. .

2.      Upon information and belief, Defendant Grifols USA, LLC ("Grifols") is a California corporation, headquartered in California, that regularly conducts business in the State of Texas. Grifols may be served with process by delivery of summons to its agent for service of process, CT Corporation System, 1999 Bryan Street #900, Dallas, Texas 75201

3.      Upon information and belief, Defendant Biomat USA, Inc ("Biomat") is a California corporation, headquartered in California, that regularly conducts business in the State of Texas.

Biomat may be served with process by delivery of summons to its agent for service of process, CT Corporation System, 1999 Bryan Street #900, Dallas, Texas 75201.

## II.

## JURISDICTION AND VENUE

4.      Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(2) because all or a substantial amount of the events or omissions giving rise to Plaintiff's claims occurred in Hidalgo County, Texas and is therefore subject to personal jurisdiction in this District.

5.      This Court has subject matter jurisdiction over the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332(a). This Court has proper jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2), because this suit is between a citizen of a domestic state (Plaintiff), and citizens of a foreign state (Defendants). The amount in controversy exceeds $75,000 because Plaintiff is entitled to a significant amount of economic and non-economic damages. This Court has supplemental jurisdiction over the state law claims alleged in this action, pursuant to 28 U.S.C. § 1367(a), because these claims are so intimately related to claims in the action exclusively within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, and because these claims arise out of the same nexus of facts and events.

6.      This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(h) and Fed. R. Civ. P. 4(k)(1). Defendants have conducted and do conduct business within the State of Texas and within this judicial district. Furthermore, Defendants, directly or through intermediaries, purchase and collect plasma in Texas, and make, distribute, offer for sale or license, sell, and advertise their products and services in the United States, the State of Texas, and the Eastern District of Texas, and maintain their principal place of business in California, respectively.

## III.
## FACTS

7.      At all times mentioned, Defendants are a large corporation that operate nationally primarily engaged in the business of selling products and services related to plasma and other blood products. Defendants owned, operated, and controlled a certain collection center, known as Grifols Plasma (Texarkana), located at 209 South Jackson Road, Edinburg, Texas 78539.

8.      Plaintiff Nicholas Uribe donated plasma at the Defendant's Plasma location in Edinburg, Texas on or about November 8, 2021.  Shortly thereafter, the Defendants wrongly and negligently notified Plaintiff Uribe that he had tested positive for Human Immunodeficiency Virus (HIV) and that he had been placed on a national registry of donors who failed testing and was banned permanently from donating plasma at any plasma donation center in the nation.  Plaintiff Uribe has presented subsequent test results to Defendants in Edinburg indicating that he is, in fact, not positive for the HIV virus.

9.      Plaintiff asserts a claim for negligence stemming from the handling, processing, and testing of plasma donations given by Plaintiff to Defendants. The Defendants negligently handled, processed, tested and improperly disclosed confidential and false medical information about those donations, erroneously and wrongfully concluding that Plaintiff had tested positive for Human Immunodeficiency HIV (HIV), and negligently ignoring negative test results, and refusing to correct the record or remove him from the national list of stigmatized donors.

10.     Even though the Defendants knew based on negative confirmatory testing that it was required to have done on Plaintiff Nicholas Uribe's donated plasma sample, Defendants nevertheless subsequently falsely informed Plaintiff and other third parties that Plaintiff had

supposedly tested positive for HIV, which resulted in Plaintiff being banned permanently from donating plasma nationwide, being placed on certain nationwide registries or lists, unable to donate his organs, or receive organ transplants, and to impair his ability to obtain health insurance, life insurance, medical treatment and employment

11.     Defendants have knowingly conspired to engage in deceptive and misleading practices intended to induce Plaintiff to donate plasma, causing Plaintiff to rely on such deceit and misrepresentations to his detriment.

12.     Defendants negligently handled, processed, and/or tested the Plaintiff's plasma donation, which led to false and inaccurate HIV-positive reading of the Plaintiff's donation by the Defendants. Defendants proceeded to use those negligently obtained and false results while ignoring other negative test results, even after obtaining their own confirmatory testing or obtaining a new sample for testing to ensure accuracy, which led to Defendants falsely disclosing the inaccurate results to their competitor plasma companies, so as to prevent Plaintiff from donating to Defendants' competitors.

13.     Defendants have refused to correct the record or remove Plaintiff from the National Donor Deferral Registry even after proof of Defendants' errors, and such refusal is wrongly based on false-positive test results when Defendants knew or should have known that the Plaintiff was not HIV positive as subsequent tests have shown.

14.     As a result of the Defendants' negligent actions, the Plaintiff has been wrongly banned from donating plasma at any center nationwide.  These actions by the Defendants tortiously interfere with Plaintiff's freedom and ability to donate plasma for compensation.

15.     Additionally, the Plaintiff has suffered bodily and personal injuries, severe mental anguish and emotional distress as a result of the Defendants' actions in negligently handling, processing,

and testing the donation, ignoring negative test results, failing to follow their own confirmatory testing results, and failing to obtain or test additional samples, and in wrongly informing him and disclosing to third parties that he was infected with the HIV virus.

## IV.
## <u>CAUSES OF ACTION</u>

### Negligence

16.     Plaintiff repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

17.     Defendants owed a duty to the Plaintiff to obtain, handle, and process his plasma donations and to test them with reasonable care to get accurate results, and not to erroneously report such results after retesting, obtaining and testing a second sample, but the Defendants breached these duties which led to tainted and/or false results which was a proximate cause of the false diagnosis of HIV, false reporting, and damages to the Plaintiff.

18.     Upon information and belief, Defendants pool the donations of plasma donors like Plaintiff, such that if any donor is HIV positive, all other donors receive false positive results.

19.     Upon information and belief, Defendants knew that a percentage of their testing results in false positive test results, yet the Defendants even after getting a confirmatory test, the Defendants still negligently disclosed false-positive test results and refused to correct the record or remove falsely stigmatized donor from their national registry.

20.     In addition, or alternatively, Defendants negligence is established under the doctrine of Res Ipsa Loquitur in that Defendants took control of Plaintiff's plasma samples and if handled, processed and tested properly without negligence, would not have led to the inaccurate results and damages to the Plaintiff.

### Violations of the Texas Deceptive Trade Practices Act

21.     Plaintiff repeats and realleges paragraphs 1 through 21 as if fully set forth herein.

22.     Plaintiff is a consumer as defined by the Texas Deceptive Trade Practices Act.  Defendants are in the business of buying and selling goods and, including plasma and other blood products, as well as providing services, including extracting, handling, testing, and processing plasma samples like that provided by Plaintiff. Defendants provided the service of extracting Plaintiff's plasma sample for sale to pharmaceutical companies and used those proceeds to compensate donors like Plaintiff.

23.     Defendants conspired to engage in deceptive and misleading activities, including the false appearance of a professional medical practice with false adherence to medical privacy and confidentiality.  Defendants' representations, including those as described in this Complaint, were false, misleading and deceptive in that Defendants falsely represented to Plaintiff that they would safely and accurately obtain, process and handle Plaintiff's plasma donations when that was not the case and failed to disclose that they would not follow further and confirmatory testing or obtain new samples for testing to ensure accuracy; or that the Defendants would falsely disclose erroneous results, and the Defendants falsely reported that the Plaintiff suffered from human immunodeficiency virus ("HIV"); or that the Defendants would permanently ban donations based on false-positive results; or that the Defendants would conceal evidence, permanently ban Plaintiff based on false information, and refuse to correct the records or remove falsely stigmatized donor from their national registry. In addition, Defendants falsely reported the Plaintiff and disclosed confidential medical information to Defendants' competitor companies based on the false, misleading, and erroneous blood tests they conducted on Plaintiff's plasma samples. With the false positive test results in hand, Defendants informed Plaintiff that Plaintiff was permanently banned from donating plasma at Defendants' and any other donation center.

24.     The representations violate subdivisions (5) and (9) of Section 17.45 of the Deceptive Trade Practices Act (DTPA) in that they constitute unconscionable action or course of action which took advantage of the lack of knowledge, ability, experience, or capacity of the Plaintiff consumer to a grossly unfair degree which Plaintiff relied on to his detriment. Once Plaintiff refuted Defendants' unconscionable and false misrepresentations, Defendants continued reliance upon their own false and misleading tests constituted immediate and ongoing "knowing" violations of the DTPA.

25.     Plaintiff relied upon these misrepresentations and non-disclosures to his detriment.

26.     Defendants' conduct as described above was a producing cause of Plaintiff's economic damages. As a result of Defendants' conduct, Plaintiff has suffered economic damages within the jurisdictional limits of this court.

27.     Defendants' conduct described above was committed knowingly and intentionally. Defendants were actually aware, at the time of the conduct of the falsity, deception, and unfairness of the conduct about which the Plaintiff complains. As a direct result of Defendants' knowing and intentional misconduct, Plaintiff suffered mental anguish. In particular, Plaintiff suffered extreme fear, depression, intense feelings of humiliation, and belittlement, an abnormal sense of anxiety and accompanying panic attacks, and loss of appetite and sleep.  Accordingly, Defendants are liable to the Plaintiff for mental anguish damages and additional damages of up to three times the amount of economic damages as permitted by the Deceptive Trade Practices Act.

28.     Additionally, Defendants are liable to the Plaintiff for their reasonable and necessary attorney's fees.

### Defamation

29.     Plaintiff repeats and realleges paragraphs 1 through 28 as if fully set forth herein.

30.     Defendants defamed Plaintiff by falsely disclosing confidential medical information, i.e. inaccurate lab test results to other plasma donation companies, which falsely stigmatized him and was the direct cause of Plaintiff's inability to donate plasma anywhere else, as well as their damages as set forth above and below.  Such slander and libel constitute defamation per se.

**Tortious Interference and Conspiracy to Commit Tortious Interference**

31.     Plaintiff repeats and realleges paragraphs 1 through 30 as if fully set forth herein.

32.     In addition to the claims and causes of action previously asserted, Plaintiff asserts that Defendants tortiously interfered with Plaintiff's rights to provide donations and be compensated for same by other plasma collection companies, and such tortious interference was a proximate cause of damages to the Plaintiff.

33.     More specifically, Defendants conspired with other plasma collection companies to form an association and national registry to use to collectively ban from plasma donations those donors whose plasma samples were negligently collected, processed, handled and tested resulting in false-positive results, yet provided each other collectively with protection from competition and the expense and potential liability of implementing practices and procedures to prevent or limit such false positive results.

Defendants further conspired with other plasma collection companies:

1.  To allowing and not prevent or limit false-positive plasma screenings;

2.  To fail to do further testing or confirmatory testing required by federal law or to ignore the negative results of such confirmatory testing;

3.  To ban donors based on false-positive plasma screenings;

4.  To refuse to remove donors from the banned list or registry when the donor is proven to test negative;

5. To disclose and share private and confidential false-positive plasma screenings in violation of state law and donor's privacy rights;

6. To refuse to correct the inaccurate records based on false-positive plasma screenings;

7. To destroy evidence, such as donor samples that were not tested and which could have been tested to disprove a false-positive screening;

8. To refer to permanent bans in misleading ways as "deferments," suggesting temporary durations;

9. To create a deceptive and misleading atmosphere of a professional medical practice with false adherence to medical privacy and confidentiality when such was not the case;

10. To refuse to provide records to affected donors; and

11. To conceal and fail to disclose all of the foregoing facts to donors so as to induce them to donate plasma under fraudulent circumstances.

34. Defendants' conduct stigmatizes donors based on false positive results causing serious difficulties for such donors to receive medical treatment, acquire medical, health or life insurance, obtain employment, and sustain build/personal relationships; and inflicting fear, grievous injury and emotional distress and harm to affected donors and their personal and professional relationships.

35. Defendants have no constitutional or otherwise legally protected right to commit illegal or other legally actionable conduct or to conspire with other to do so.

36. Additional facts and evidence that support Plaintiff's negligence, DTPA, and other causes of action against Defendants, including:

- Defendants were required by law to conduct "further testing" but failed to do so or ignored the negative results of such confirmatory testing;

- Based on information and belief, subsequent to the dates of collection of the samples collected from Plaintiff, Defendants destroyed other samples collected at the same time as the sample at issue, which could have been tested as further proof of Defendants' false-positive error;

- There are other substantially similar victims of Defendants' negligence and deceptive practices, which victim witnesses and the records regarding same will provide evidence of a pattern and/or practice by Defendants of negligence, gross negligence (with subjective awareness of the extreme risk of harm), and deceptive actions done knowingly; and

- The facts stated above, demonstrating that other plasma collection companies have conspired with Defendants to tortiously interfere with Plaintiffs' freedom and ability to donate plasma for compensation.

**V.**

37.     Plaintiff further assert that the foregoing conduct was done intentionally and/or with gross negligence for which Defendants are liable for exemplary damages.

**VI.**

38.     Plaintiff also seeks a Declaratory Judgment that he is not HIV positive and request that Defendants be ordered and compelled to provide mandatory injunctive relief to correct each of their records, including any national database entries, registries, or lists. Plaintiffs further seek attorney's fees under Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure.

39.     In addition, Plaintiff request that the Court declare that Plaintiff is not HIV-positive, as alleged or implied by Defendants, and that their test results were false-positive test results, so that certain rights taken away from Plaintiffs due to Defendants' conduct can be restored.

**VII.**

**<u>USE OF DISCOVERY</u>**

40.     Plaintiff intend to use all documents produced by Defendants in discovery conducted in this matter at any pretrial proceeding and/or trial.

## VIII.
## REQUEST FOR LEGAL HOLD

41.     Defendants is requested to hold and to take steps necessary to preserve all evidence relevant to this case during the pendency of this litigation, including but not limited to all documents, records, emails, letters, text messages, video, audio, and any other form of communication or other evidence related to the basis of this lawsuit.

## IX.
## CONDITIONS PRECEDENT

42.     All conditions precedent to Plaintiff's claims have occurred or been waived by Defendants.

## X.
## JURY DEMAND

43.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury and tender the appropriate fee with this Complaint.

## PRAYER

Wherefore, premises considered, Plaintiff prays that he have and recover Judgment jointly and severally against Defendants, for their damages, attorney's fees, interest allowed by law, additional damages under the DTPA, punitive damages, and court costs, and such other and further relief to which they may be entitled.

Respectfully submitted,


/s/ D. Bradley Kizzia
**D. BRADLEY KIZZIA**
State Bar No. 11547550
bkizzia@kjpllc.com
**KIZZIA JOHNSON PLLC**

1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

**ATTORNEYS FOR PLAINTIFFS**